UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| H.D. SMITH WHOLESALE DRUG CO., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DENNIS CRAWFORD d/b/a CRAWFORD PHARMACIES,<br><br>    Defendant. | 11-3448 |

## OPINION

This matter comes before the Court on Plaintiff H.D. Smith Wholesale Drug Co.'s ("H.D. Smith") Partial Motion for Summary Judgment (d/e 61) on Counts I through III of H.D. Smith's First Amended Complaint.  H.D. Smith's Motion is GRANTED because Defendant Dennis Crawford, d/b/a Crawford Pharmacies ("Crawford"), has breached terms of the duly executed First Promissory Note (Count I), Second Promissory Note (Count II), and Primary Vendor Agreement (Count III).  Further, Crawford agrees to forego his unclean hands affirmative defense and fails to support his Counterclaim that disputes the amount H.D. Smith says Crawford owes for Crawford's breach of the Promissory Notes and Primary Vendor

Agreement. H.D. Smith shall substantiate the amounts owed by Crawford to H.D. Smith at a hearing in open court on May 13, 2013 at 3:00 p.m.

## I. FACTUAL BACKGROUND

H.D. Smith is a nationwide wholesale pharmaceutical company headquartered in Springfield, Illinois. Until about October 1, 2011, Crawford owned and operated retail pharmacies in Texas at these locations: 213 E. San Patricio, Mathis, Texas 78368; 907 North Main Street, Bandera, Texas 78003; 19244 McDonald St., Lytle, Texas 78052; 407 E. Orange, Orange Grove, Texas 78372; and 8103 N. State Hwy 16, Poteet, Texas 78065.

Between August 2, 2007 and November 23, 2011, H.D. Smith and Crawford had an ongoing business relationship where Crawford purchased health products on account from H.D. Smith. Crawford purchased health products at agreed rates and pursuant to credit terms detailed in credit and security agreements between Crawford and H.D. Smith. Crawford sold these health products at his retail pharmacies.

Crawford voiced concerns about his debt to H.D. Smith. Crawford believed he should have received additional discounts and different pricing on some health products. Crawford spoke with H.D. Smith about a

payment agreement and the terms of the parties' business relationship going forward.

In 2010 and 2011, H.D. Smith and Crawford began negotiating the terms of new promissory note agreements and a new pricing structure. As a negotiating tactic, Crawford intentionally misrepresented to H.D. Smith that he had legal counsel. On or around June 6, 2011, Crawford received draft promissory notes similar to those ultimately executed.

### A.   The Parties Duly Executed Two Promissory Notes to Help Crawford Manage His Debt to H.D. Smith

On August 17, 2011, at Crawford's request, the parties met at H.D. Smith's office in Ft. Worth, Texas. Crawford and David Watkins, former Chief Financial Officer for H.D. Smith, duly executed the First Promissory Note for $2,514,739.95 with a yearly interest rate of 6.0% and the Second Promissory Note for $474,972.04 with a yearly interest rate of 0%. See d/e 20, Ex. 1 at 3-6, 11-14. The Promissory Notes set up a plan for Crawford to pay off his debt. H.D. Smith also forgave $474,974.04 of Crawford's debt. See d/e 61 at 13, 27.

Illinois law applies to the terms of the Promissory Notes. The Payment provision of the First Promissory Note states:

> PAYMENTS. Borrower shall pay principal and interest in 36 equal weekly installments of $18,000.00 payable on Friday of each week beginning on 8/26/11, Borrower shall then pay

principal and interest in 82 equal weekly installments of $25,000.00 payable on Friday of each week, with a final payment of $7,962.73 on 11/29/13 until the balance is paid in full.

See d/e 20, Ex. 1 at 4.

Both Promissory Notes also contain these provisions:

DEFAULT.  Lender may terminate this Promissory Note, accelerate and declare the entire balance then outstanding under this Agreement to be immediately due and payable, suspend or cease any future credit and/or shipments, commence suit to recover all sums due, commence a relevant action and charge the default interest and reasonable costs of collection, including, but not limited to, the reasonable legal fees incurred by Lender in the event that any event of default shall occur.  Events of default are as follows: (a) Any fraud or material misrepresentation in connection with any information provided in the credit application, and/or any other Agreement incorporated herein by express reference, by Borrower and/or any cross-corporate guarantor; (b) Borrower does not meet the payment terms of this Agreement and/or the payment terms of any trade debt incidental to this Agreement; (c) Any Cross-corporate guarantor does not meet the payment terms of any agreement it has executed and delivered to Lender and/or fails to meet the payment terms of any trade debt balance owed to Lender; (d) Borrower or any cross-corporate guarantor fails to satisfy any term, condition, and/or covenant of this Agreement or any Agreement incorporated herein by express reference; (d) any action or conduct adversely affects the value of the collateral, the collateral of the Lender's rights in the collateral; (e) any Bulk transfer outside the ordinary course of business; (f) failure of Maker to meet minimum purchases of $1,900,000.00 per month, in any single month during term of this Note; and/or (g) filing by or against Borrower or any Guarantor of a petition in bankruptcy or for a receiver for Borrower or Guarantor or any property thereof.

BULK TRANSFER PROHIBITION.  Any transfer of the Borrower's Assets in bulk outside the ordinary course of business

> shall be a term of default under this Agreement. In the event that Borrower shall intend to make a transfer in bulk of any collateral, it shall give the Lender twenty (20) days advance notice of such transfer, including all transferees, the assets being transferred, the consideration being paid, and the date and place of the closing. All sums due to the Lender under this Agreement shall become accelerated and shall become immediately due upon any bulk transfer. Borrower hereby agrees not to accept any proceeds of any sale unless certified funds have been tendered directly by the transferee to the Lender to satisfy all debts then due or overdue and owing.

See d/e 20, Ex. 1 at 4, 12.

Between August 26, 2011 and October 31, 2011, Crawford failed to make two weekly installment payments of $18,000.00 on the First Promissory Note. Crawford made his last payment on the First Promissory Note on October 31, 2011. On November 2, 2011, H.D. Smith sent and Crawford received an acceleration notice.

Crawford owes H.D. Smith at least $1.45 million on the First and Second Promissory Notes. H.D. Smith is entitled to attorney's fees, court costs, and interest pursuant to the Default provision of the Second Promissory Note.

**B.    The Parties Also Duly Executed a Primary Vendor Agreement to Manage the Parties' Relationship Going Forward**

At the same August 17, 2011 meeting where the parties duly executed the Promissory Notes, David Watkins and Ken Campbell, H.D. Smith's

Texas Division Manager, executed a Primary Vendor Agreement with Crawford. H.D. Smith provided health products to Crawford pursuant to the terms of the Primary Vendor Agreement. In the Agreement, Crawford agreed to pay the usual and customary charges for all health products and associated taxes and fees. Crawford also agreed to pay H.D. Smith pursuant to the terms of the Primary Vendor Agreement which included a 1.5% monthly finance charge on any balance unpaid for ten days after the due date. Crawford admits that he owes at least $184,000.00 under the Primary Vendor Agreement.

**C.     Crawford Sold His Business Without Notifying H.D. Smith**

On October 1, 2011, without notifying H.D. Smith, Crawford sold all of his pharmacies to a company called Crawford Network Pharmacies LLC owned in part by Sam Maddali. Crawford has no ownership interest in this business. In that same month, Crawford discontinued purchasing $1.9 million per month of health products from H.D. Smith. The Default provisions of the Promissory Notes required Crawford to purchase $1.9 million per month in health products from H.D. Smith.

## II.     PROCEDURAL BACKGROUND

On November 23, 2011, H.D. Smith filed a five-count

Complaint in Sangamon County Circuit Court, Illinois alleging Crawford breached terms of the First Promissory Note (Count I), Second Promissory Note (Count II), and Primary Vendor Agreement (Count III), and raising a claim for Action on Crawford's unpaid account (Count IV) and seeking relief in Quantum Meruit (Count V).  H.D. Smith sought over $3,000,000.00 in damages.

On December 24, 2011, Crawford filed a Notice of Removal, a general denial to the Complaint, and four affirmative defenses.  See d/e 1, Ex. 3 at 2-4.  Crawford's affirmative defenses included duress, unclean hands, fraud, and setoff.  This Court struck Crawford's fraud and duress defenses.  This Court also recharacterized as a Counterclaim Crawford's setoff defense which states:

> Defendant is not liable to Plaintiff because all proper setoffs have not been taken by Plaintiff.  Defendant acknowledges that he owes Plaintiff a sum of money, but denies that the amount claimed by Plaintiff contains all proper setoffs, discounts, and other deductions that Defendant is entitled to.

See d/e 71.  Crawford's unclean hands affirmative defense remains.

H.D. Smith filed this Partial Motion for Summary Judgment on its claims that Crawford breached terms of the First Promissory Note (Count I), Second Promissory Note (Count II), and Primary Vendor Agreement (Count III).  See d/e 61.  H.D. Smith now seeks judgment of $2,348,732.21

in damages, $60,411.63 in attorney's fees, and $5,630.20 for costs. See d/e 61, Ex. 16, 17. H.D. Smith concedes that Crawford paid $1 million to H.D. Smith via wire transfer, and that H.D. Smith received the money on December 13, 2012. See d/e 61, Ex. 15. However, this payment has not been included in the damages H.D. Smith seeks. H.D. Smith also notes that interest is accruing at $392.59 per day on the amount owed under the First Promissory Note and $154.69 per day on the amount owed under the Primary Vendor Agreement. Further, H.D. Smith requests leave to submit an Affidavit for additional attorney's fees and costs before the Court enters final judgment. See d/e 61 at 17, 20, 24.

### III. JURISDICTION AND VENUE

H.D. Smith is a Delaware Corporation with its principal place of business in Springfield, Illinois. Dennis Crawford, a sole proprietor doing business as Crawford Pharmacies, operates in Texas. The Parties are considered citizens of different states and the amount in controversy exceeds $75,000.00. Therefore, the Court has subject matter jurisdiction pursuant to the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

Moreover, the parties agreed in the Promissory Notes and Primary Vendor Agreement that this Court would hear matters arising under the Agreements. See d/e 20 at ¶¶ 19, 22, 29; see also d/e 22 at ¶¶ 19, 22, 29.

Neither party has objected to the forum selection clauses. Therefore, this Court will honor the forum selection clauses in the Agreements at issue.

## IV.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This requires the moving party to show that no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-54, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997). At this stage, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010). The nonmoving party, however, must also provide evidence in opposition to the motion. Specifically, "to oppose a motion for summary judgment, the nonmoving party . . . must do more than raise a metaphysical doubt as to the material facts. Rather, [that party] must come forward with specific

facts showing that there is a genuine issue for trial." Gleason, 118 F.3d at 1139 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citations and internal quotation marks omitted)). A genuine issue of material fact exists if sufficient evidence favoring the nonmoving party would permit a jury to return a verdict for that party. Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) (citing Sides v. City of Champaign, 496 F.3d 820, 826 (7th Cir. 2007), and Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005)).

## V.  ANALYSIS

Crawford agrees to forego his unclean hands affirmative defense. See d/e 63 at 2. Crawford also admits that he breached terms of the Primary Vendor Agreement. See d/e 63 at 2. Crawford argues, however, that he never mutually assented to the debt amounts rolled into the First and Second Promissory Notes. See d/e 63 at 4-5. No mutual assent would mean the Promissory Notes were never valid contracts. Further, in the Counterclaim, Crawford disputes the amount H.D. Smith says Crawford owes for Crawford's breach of the duly executed Promissory Notes and Primary Vendor Agreement. See d/e 63 at 5.

**A.    The Parties' Assented to the Terms of the Promissory Notes**

Crawford argues first that H.D. Smith did not provide proper discounts before the parties executed the Promissory Notes. See d/e 63 at 2. Crawford asserts that H.D. Smith's failure to provide these discounts means that the debt rolled into the Promissory Notes was not calculated correctly. See d/e 63 at 2. Because Crawford disagrees with the amounts due under the Promissory Notes, he argues that he never mutually assented to the Promissory Notes' terms. See d/e 63 at 4-5.

The parties agree that Illinois contract law governs. See d/e 61 at ¶¶ 19, 30; d/e 63 at ¶ 6. See also Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 734 n.8 (7th Cir. 2005) (applying Illinois contract law when parties did not dispute its applicability). In Illinois, a valid contract requires mutual assent by the parties to the essential terms and conditions of the contractual relationship. IMI Norgren, Inc. v. D & D Tooling Mfg., Inc., 306 F. Supp. 2d 796, 801-02 (N.D. Ill. 2004). A signature shows mutuality, although, mutuality may also be shown by the objective acts or conduct of the parties. AGA Shareholders, LLC v. CSK Auto, Inc., 467 F. Supp. 2d 834, 846 (N.D. Ill. 2006); see also Steinberg v. Chicago Med. Sch., 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634, 640 (1977)). Further, when a contract's basic facts are not in dispute, whether a valid contract exists is a question of law. Echo, Inc. v. Whitson Co., Inc., 121 F.3d 1099, 1102 (7th Cir. 1997).

Here, Crawford accumulated a significant debt to H.D. Smith before signing the Promissory Notes and Primary Vendor Agreement.  See d/e 61 at ¶ 2; d/e 63 at ¶ 6.  Crawford voiced concerns to H.D. Smith regarding the amount of his debt.  Crawford also told H.D. Smith he should receive additional discounts and different pricing on some health products already received.  See d/e 61 at ¶ 3; d/e 63 at ¶ 6.

In 2010 and 2011, Crawford and H.D. Smith began negotiating and exchanging draft promissory note agreements and discussing a new pricing structure going forward.  See d/e 61, Ex. 1 at 9-25; d/e 61 Ex. 4 at 9-11; see also d/e 61 at ¶ 5; d/e 63 at ¶ 6.  As a negotiating tactic, Crawford intentionally misrepresented having counsel.  See d/e 61, Ex. 1 at 20; see also d/e 61 at ¶ 7; d/e 63 at ¶ 6.  On June 6, 2011, Crawford received draft promissory notes similar to those ultimately executed.  See d/e 61, Ex. 3; see also d/e 61 at ¶ 6; d/e 63 at ¶ 6.

On August 17, 2011, at Crawford's request, H.D. Smith and Crawford held a meeting to discuss the parties' business relationship going forward.  The parties negotiated the terms of Promissory Notes as is evidenced by Crawford's deposition testimony:

> Q. You said previously that this meeting at these offices on August 17 started midmorning, is that right?
>
> A. Yes.

> Q. About how long did they - - did the meeting last?
>
> A. A couple hours.
>
> Q. Okay. Describe what happened at the meeting for me.
>
> A. They presented - - came in, then presented the document to me. I told them I wasn't happy with it, I didn't like it. I absolutely thought I should have gotten a greater discount for the generic purchases that I should have gotten. And they left the room, came back and took half the interest off, and then agreed to - - to set up a second note at zero percent. I still wasn't happy with that. I told them I didn't think there should be any interest because the delay I got on my cost minus four to cost minus two, that cash flow helped cause me to be in this situation for the penalties and interest.

See d/e 61, Ex. 1 at 35.

Further, as part of the deal, H.D. Smith forgave $474,974.04 of Crawford's debt. See d/e 61 at 13, 27. Both parties signed the new Promissory Notes at the close of this meeting. See d/e 20, Ex. 1 at 6, 14. Crawford's communications with H.D. Smith prior to the meeting, the meeting that involved further negotiations, the debt written off by H.D. Smith, and the parties' signatures on the Promissory Notes objectively demonstrate mutual assent to the terms of the Promissory Notes.

**B.    Crawford Breached Terms of the Primary Vendor Agreement and Promissory Notes**

Moreover, Crawford admits that he breached terms of the Primary Vendor Agreement. Crawford also failed to make two weekly installment

payments of $18,000.00 pursuant to the Payment provision of the First Promissory Note. See d/e 61 at ¶ 23; d/e 63 at ¶ 6.  Further, Crawford failed to make purchases equaling $1.9 million per month and sold all of his pharmacies on October 1, 2011.  These latter two acts violate terms of the Default and Bulk Transfer Prohibition provisions in the First and Second Promissory Notes.  See d/e 61 at ¶¶ 37-38; d/e 63 at ¶ 6.  Crawford's concession regarding the Primary Vendor Agreement and his conduct that breached the First and Second Promissory Note provisions demonstrate that he is liable for a breach of all three Agreements.

**C.    Crawford Has Failed to Present Evidence to Support His Claim that He Owes Less than H.D. Smith Alleges**

Crawford also argues in his Counterclaim that he owes some amount, but H.D. Smith says Crawford owes more than he actually does.  See d/e 71 at 3.  Crawford bases this argument on discounts and pricing issues that occurred prior to the parties duly executing the Promissory Notes and Primary Vendor Agreement.  Crawford contends that a dispute exists regarding the amount Crawford owes to H.D. Smith and, therefore, that summary judgment is not appropriate.  See d/e 63 at 5.

However, Crawford has failed to provide evidence to support his Counterclaim.  Instead, Crawford merely insists that he owes some amount but that "[t]he amount in question is unknown to Crawford."  See d/e 63 at

5. Crawford's conclusory statement does not overcome H.D. Smith's entitlement to summary judgment for Crawford's breach of the duly executed Promissory Notes and Primary Vendor Agreement.  See Gleason, 118 F.3d at 1139 (citing Matsushita Elec. Indus. Co., Ltd, 475 U.S. at 586-87.  But the amounts Crawford owes to H.D. Smith have changed during the pendency of this Motion due to interest that has accrued, a $1 million payment made by Crawford, and attorney's fees and costs that have accumulated.  Consequently, H.D. Smith will need to substantiate the amounts owed at a hearing in open court.

## VI. CONCLUSION

The Court GRANTS summary judgment on Counts I through III of H.D. Smith's First Amended Complaint.  Before the Clerk enters final judgment on the amounts Crawford owes for his breach of the duly executed Promissory Notes and Primary Vendor Agreement, H.D. Smith SHALL prepare an accounting to present at a hearing in open court on May 13, 2013 at 3:00 p.m.

IT IS SO ORDERED.

ENTER: April 29, 2013

FOR THE COURT:                              s/ Sue E. Myerscough
                                         SUE E. MYERSCOUGH
                                      UNITED STATES DISTRICT JUDGE